Lowe *vs.* Bryant.

LOWE *vs.* BRYANT, administrator.

1. One W. H. L. being in treaty of marriage agreement with N., his intended wife, agreed with her in parol that the property he should receive by her on the marriage, he would give to her and the children of their marriage by will; after the marriage prepared a will according to that agreement, and kept it by him for that purpose; subsequently executed such will, and immediately afterwards, by codicil, so changed the disposition of that property as to give his wife only a life-estate in the property: *Held*, That upon the execution of the will, the agreement was executed, and excluded him from making any subsequent disposition, by codicil or otherwise, that would defeat the agreement, and it must be enforced.

In Equity, in Taylor Superior Court. Tried before Judge WORRILL, at April Term, 1860.

This was a bill filed originally by William K. Lowe, executor and legatee in remainder, of William H. Lowe, deceased against Martha T. Lowe, widow of testator, to compel her to give bond and security for the forthcoming of certain negroes and other personal estate, which the bill alleged she held only for life, under the terms and provisions of the last will and testament of said testator.

The following is a copy of said will and codicil thereto :

"GEORGIA—TAYLOR COUNTY :

"I, William H. Lowe, of the county and State aforesaid, being of advanced age, but of sound and disposing mind and memory, and being desirous of making a disposition of the effects with which a kind Providence has blessed me, *after my death*, do make this my last will and testament, hereby revoking and annulling all others heretofore made by me.

"Item 1st. It is my will and desire that my body be buried in a decent and christian-like manner, suitable to my circumstances and condition in life. My soul, I trust, shall return to rest with God, who gave it, as I hope for eternal salvation through the merits and atonement of Jesus Christ.

"Item 2d. It is my will and desire that all my just debts be paid by my executors hereinafter named, as I am unwilling my creditors should be delayed of their rights, especially as there is no necessity for delay.

Lowe *vs.* Bryant.

"Item 3d. I give, bequeath and devise to my beloved wife, Martha T. Lowe, for and during her natural life, the following property to-wit: George, a negro boy about eighteen years old; Ellen, a woman about 22; Tilly, a girl about ten; Ben, a boy about five; Osborn, a man about fifty; and Mariah a woman about fifty years old. All of the household furniture which I received by my said wife upon our intermarriage, to-wit: *one teastor bedstead and furniture, one bureau, one work-stand, one half-teastor bedstead and furniture, four trunks, two wash-stands, three looking-glasses, and one brass clock.* And *at the death* of my said wife, Martha T. Lowe, my will is, that *said property,* shall go to and become the property of *my child or children* which my said wife *may have living by me,* to them and their heirs forever; and in the event that my said wife should not have by me any child or children at her death living, then said property to become *the property absolutely of my said wife, to be disposed of as she may think proper by will or otherwise.*

"Also, I give, bequeath and devise unto my said wife, Martha T. Lowe, for and during her natural life, the following lands, to-wit: Twenty-five acres off of lot No. 224, in the north-east corner of said lot, in the 3d district of originally Muscogee, now Taylor county, and 125 acres off of the west side of lot of land No. 242, in the 2d district of originally Muscogee, now Taylor county, with all the members, rights and appurtenances; also, my match-horses, rockaway and harness. And at the death of my said wife, said land, horses, rockaway and harness shall be equally divided among all my children subject to the restrictions hereinafter named.

"Item 4th. I give and bequeath unto my step-daughter, Jeffersonia R. Brooks, one half-teastor bedstead and furniture, and one gold watch, which I received by my said wife upon our intermarriage; and if my said step-daughter, Jeffersonia R. Brooks, should depart this life before marrying or arriving at the age of twenty-one years, then said bedstead, furniture and watch to become the property of my -said wife, subject to her disposal.

"Item 5th. I give and bequeath unto my son James M. Lowe, two hundred dollars, to my son Augustin L. Lowe, two hundred and fifty dollars, and to my daughter R—— Lowe, three hundred and fifty dollars, to make them equal

with my children to whom I have already given a portion of my property.

"Item 6th. All the balance of my property of every description whatever, real, personal and mixed, not heretofore disposed of by this my will, I desire shall be equally divided among all my children subject to the restrictions hereinafter named, share and share alike, to-wit: Patience L. Gates, William R. Lowe, Sarah A. Bryant, James M. Lowe, Augustin L. Lowe, and Roena Lowe, (including any children I may hereafter have by my said wife;) the land to be rented and the negroes hired out not exceeding fifteen months, (discretionary with my said executors, they taking into consideration the time of the year in which I may die to govern them as to the length of time of renting and hiring,) and the proceeds of the rent and hire thereof to be applied to the payment of my debts and the specified legacies in this my last will. My further will and desire is, that the negroes (not heretofore disposed of by this my will) shall be divided without a sale thereof, and that the balance of my property— lands, household and kitchen furniture, and stock of every description—shall be sold according to law, and the money arising from the sale thereof be applied to the payment of debts and legacies, and the balance of said money to be equally divided among all my children, subject to the restrictions hereinafter named.

"Item 7th. It is my will and desire, if any of my aforesaid children should die without lawful issue, that then and in that event, his, her or their distributive share of my estate shall go to and be equally divided among his, her or their brothers and sisters, subject to the same restrictions hereinafter named.

"Item 8th. It is my will and desire that all the property conveyed by this my last will to my children aforesaid, shall go to them respectively in trust for their children; that they shall not have the power to dispose of the property which they may respectively take under and by virtue of this my will, in any manner whatever, nor shall said property be liable to the payment of the debts of my said children,; but at their respective deaths, their respective shares shall vest absolutely in their children and their heirs forever. And if any of my said children should die without lawful issue, that

his, her or their share or shares under this my will to be divided according to the seventh item of this will.

"Item ninth. I hereby nominate and appoint my sons, William R. Lowe, James M. Lowe, and Augustin L. Lowe, my executors under this my last will and testament.

" In witness whereof, I have hereunto set my hand and affixed my seal, this the 25th day of October, A. D., 1855.

"WM. H. LOWE." [L. S.]

*Codicil.*

" GEORGIA—TAYLOR COUNTY:

" Whereas, I, William H. Lowe, did, on the 25th day of October, A. D., 1855, sign, seal, declare and publish my last will and testament, in the presence of Franklin A. Royal, Elias W. Bowden, J. P., and James S. Harris, C. J. C., who signed the said will and testament as witnesses ; and whereas, I am desirous of altering and changing a bequest in said will : I therefore make and publish this codicil to said will.

" Item 1st. That my sons, after receiving their several bequests, named in my previous will, may have power to dispose of their respective shares as they may think fit and proper.

" Item 2d. My wife, Martha T. Lowe, to have a certain negro fellow named Edmund, about forty-four or five years of age, during her natural life, and after the decease of my wife, then said negro to go to Martha Ellen.

" Item 3d. To my daughter Martha Ellen, at the death of my wife, to have all the property heretofore devised to my said wife, and no more of my said estate, with the exception of lands left my wife, and the said Martha Ellen to have an equal share with the rest of my children in said lands.

" Item 4th. Should my daughter Martha Ellen die without issue, her share heretofore devised shall come back to my estate and be equally divided amongst all my lawful heirs. This 25th October, A. D., 1855.

"WM. H. LOWE. [L. S.]

" (Executed before same witnesses.)

"Admitted to record November 6th, 1855, and letters issued to executors named in will."

Defendant answered the bill. It appeared that Martha

Ellen Lowe died in 1857, a child of only two years of age; that she was born after the writing of the will, but before the execution thereof, and before the codicil was written and executed. It further appeared, that all the property in controversy belonged to defendant prior to her marriage with testator, she being a widow (Mrs. Brooks) when she married Lowe.

All that portion of the answer claiming, and the testimony offered to show that there was a parol ante-nuptial settlement between testator and defendant, was rejected by the Court, and defendant excepted.

The Court below held and charged the jury, that under said will, defendant took only a life-interest or estate in the property, and at her death the same went to testator's children; and that complainant was entitled to the relief he sought by his bill.

To which charge counsel for defendant excepted.

The jury brought a verdict agreeably to the charge of the Court, and counsel for defendant tendered their bill of exceptions, assigning as error the rulings and charge aforesaid.

James T. May; Edwards & Holsey, for defendant in error.

Levi B. Smith, Grice & Wallace, *contra.*

*By the Court.*—Lyon, J., delivering the opinion.

On the trial, the plaintiff in error offered to prove by James T. Harman, one of the witnesses to the will, and the person who seems to have written the codicil, that the testator said, before the will was executed, and before the codicil was prepared, that he made an ante-nuptial contract with his wife, Martha T. Lowe, by parol, and that in said contract he did agree, that if he, Lowe, died before the said Martha T., that he would, by will, give to the said Martha and her children all the property that he should receive by said Martha upon their intermarriage; and that he had this will written in accordance with said ante-nuptial contract, and kept it by him for that purpose. Upon objection, the Court ruled out the evidence, and we think that such ruling

was error.  It is true that the evidence was offered, not for the purpose of enforcing such ante-nuptial contract, but for the purpose of sustaining or aiding the construction put on the will and codicil by the defendant.  The evidence was not competent for that purpose, as there was no ambiguity about the will or codicil.  The import was plain and obvious, giving to the widow only a life-estate in the property in controversy, but the evidence was admissible for the purpose of setting up and enforcing such ante-nuptial contract.  If it was true, that the testator did make such ante-nuptial agreement, and his admissions are competent to prove it, and he had this will written in accordance with such agreement, and kept it by him for that purpose, this was such a part performance of the agreement as took the case out of the Statute of Frauds, even if it was within the statute, which, in the opinion of this Court, is very doubtful.  And when the testator signed and executed that will, it became a fully executed one, and could not be altered by any codicil or subsequent will that he could make.  In *Cookes vs. Mascall*, 2 *Vern.*, 200, the parties had agreed among themselves upon terms of settlement, and the agreement was drawn up in articles, in writing, to be mutually signed, but was not, either before or after.  The Court decreed that Mascall should perform the agreement according to what was contained in the writing, as was intended should have been done, although no other agreement was reduced to writing.

In *Taylor vs. Beech,* 2 *Ves., Sr.*, 297, the property of the wife, by a previous marriage, was agreed to be assigned to trustees for her separate use during her coverture, and to be applied, after her death, to such uses as she should appoint. They sent to an agent to prepare the writing, but the marriage took place before the agreement could be carried out. A proper draft of assignment was afterwards proposed, in which alterations were made by the husband's own handwriting.  On delivering it to his wife, he told her he had made no other alteration than was for her benefit, and suffered her to receive it to her separate use during coverture. The wife, by will, gave the £500 00 to the plaintiffs, who filed the bill for it.  The defendant pleaded the Statute of of Frauds because of the agreement not being reduced to writing.  The Court overruled the plea, saying that the agreement was good, if afterwards signed by him ; " that the

rule extends not to facts subsequent, viz: showing a part performance in which the statute cannot be pleaded." The correctness of the first decision has been greatly doubted as being a violation of the Statute of Frauds, and it is only cited to show the extent to which the highest Courts of England have gone to take these cases out of the Statute of Frauds, and that even those Courts will lay hold of the slightest circumstances, for that purpose. This Court, in coming to its conclusion in this case, was not governed by that case or any like it, but on the facts proposed to be proven by Harmon. If the statement in the record is true, we hold that it presents a complete reply to the relief prayed for by the complainants.

But for this, the case would be with the complainants.

Judgment reversed.